IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,          ) | |
| )  | |
| Plaintiff,                         ) | |
| )  | |
| v.                                 ) | 05 C 5389 |
| )  | |
| OLEG OKS, a/k/a Oleg A. Oks and Oleg Alex ) | Judge Ronald A. Guzmán |
| Oks, individually and as an officer of the ) | |
| corporate defendants;              ) | |
| ALEKSANDR OKS, individually and as an ) | |
| officer of the corporate defendants; ) | |
| PHILIP NEMIROVSKY, individually and as an ) | |
| officer of the corporate defendants; ) | |
| BORIS PEKAR, individually and as an officer ) | |
| of the corporate defendants; and   ) | |
| 1530605 ONTARIO INC., also d/b/a Pacific ) | |
| Liberty;                           ) | |
| 1559927 ONTARIO INC., also d/b/a Pacific ) | |
| Liberty Group and Pacific Liberty  ) | |
| Liberty W Group;                   ) | |
| 1565205 ONTARIO INC., also d/b/a Pacific ) | |
| Liberty and Pacific Liberty Liberty W; ) | |
| 1585392 ONTARIO INC., also d/b/a Liberty ) | |
| Wide Info Services, Liberty Wide Info ) | |
| Services Group, Liberty Wide Services ) | |
| and Liberty Wide;                  ) | |
| 1620142 ONTARIO INC., also d/b/a Liberty ) | |
| Sun Info Services and Liberty Sun Info; ) | |
| 1619264 ONTARIO INC., also d/b/a C & B ) | |
| Communications Group;              ) | |
| 1629930 ONTARIO INC., also d/b/a Atlantic ) | |
| One Info Services Grp and Atlantic Info ) | |
| One Services Group;                ) | |
| 1485635 ONTARIO INC. (dissolved), also d/b/a ) | |
| Nationwide Credit Service Inc., Nation ) | |
| Wide Information Services Group Inc., ) | |
| and Nationwide Information Services, ) | |
| Ontario, Canada corporations,      ) | |
| )  | |
| Defendants.                        ) | |

# MEMORANDUM OPINION AND ORDER

The Federal Trade Commission ("FTC") has sued defendants Oleg Oks, Aleksandr Oks, Philip Nemirovsky, Boris Pekar, 1530605 Ontario Inc., 1559927 Ontario Inc., 1565205 Ontario Inc., 1585392 Ontario Inc., 1620142 Ontario Inc., 1619264 Ontario Inc., 1629930 Ontario Inc., and 1485635 Ontario Inc. for violating Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310. Before the Court are the FTC's motion for summary judgment against defendants Oleg Oks and Aleksandr Oks ("the Oks") and a motion for default judgment against Philip Nemirovsky, Boris Pekar and the corporate defendants.[1] For the reasons set forth below, the Court grants the motion as to Oleg and Aleksandr Oks' liability and denies the motion without prejudice as to the monetary and permanent injunctive relief sought.

## Facts

From 2001 until September 2005, the corporate defendants, through their agents, placed unsolicited outbound telephone calls to consumers throughout the United States and falsely offered to provide pre-approved Visa or MasterCard credit cards to those consumers who agreed to permit defendants to debit their bank accounts electronically for an advance fee ranging from $219.00 to $319.00. (Pl.'s LR56.1(a)(3) Stmt. ¶ 16.) Defendants represented that the cards would have credit limits ranging from $1,000.00 to $10,000.00 with no annual fees and low interest rates, and frequently promised additional benefits, including a free cellular telephone,

---

[1] Because the Court granted the FTC's motion for default judgment as to Nemirovsky, Pekar and the corporate defendants on January 26, 2006, it views this motion with respect to those defendants as a prove-up of the monetary and injunctive relief sought.

2

satellite dish system, vacation package, or home security system, at no additional cost. (*Id.* ¶¶ 17, 24.) During the telephone calls, defendants requested bank account information, including bank routing information. (*Id.* ¶ 18.) Defendants routinely debited the bank accounts of customers who agreed to pay fees in advance of receiving their promised credit cards. (*Id.* ¶ 19.) After debiting the advance fees, defendants did not provide the promised major credit cards. (*Id.* ¶ 20.) Defendants sometimes provided consumers with a "Membership Benefit Package," which contained: a "Membership Merchandise Card" that could be used to purchase merchandise from a catalog; coupons and certificates from other companies that stated they could be redeemed for a cellular telephone, a satellite dish system, a security system, and a vacation package if the consumers paid additional fees; and an application for a "stored value cash card" that could be used for purchases only if consumers loaded value on to the card. (*Id.* ¶ 21.) Defendants did not provide consumers with, or arrange for consumers to receive, the promised major credit cards. (*Id.* ¶ 22.) Defendants were not authorized to issue or market Visa or MasterCard credit cards to the public, or to use Visa or MasterCard trademarks in their promotions. (*Id.*)

Since at least 2004, and continuing until at least September 2005, when a temporary restraining order was entered in this case, defendants placed unsolicited outbound telephone calls to consumers throughout the United States and falsely offered to provide specified brand name computers to consumers who permitted defendants to debit their bank accounts for a one-time fee ranging from $269.00 to $318.00. (*Id.* ¶ 25.) Defendants sometimes told consumers that they would receive a seventeen-inch flat screen monitor, a free cellular telephone, satellite dish system, digital camera, or a vacation, at no additional cost. (*Id.*) During the telephone calls to consumers, defendants requested consumers' bank account information, including bank routing information, in order to debit the bank accounts of consumers who agreed to pay the one-time

fee for the computers and other benefits promised during the telephone calls. (*Id.* ¶ 26.) After debiting consumers' bank accounts, defendants did not provide consumers with the promised computers or other merchandise and benefits. (*Id.* ¶ 27.) Instead, defendants provided consumers with certificates that purportedly could be used to obtain computers from other companies. (*Id.*) In order to redeem the certificates, however, consumers were required to pay additional fees that defendants did not disclose prior to debiting consumers' bank accounts. (*Id.* ¶¶ 27, 28.) Additionally, the computers offered in the certificates were not the specified brand-name computers promised by defendants and did not include the components promised by defendants, such as a seventeen-inch flat screen monitor, without additional payment. (*Id.* ¶ 27.) Defendants never sent consumers computers, the promised flat-screen monitors, or any other merchandise or benefits. (*Id.* ¶¶ 29, 30.)

Oleg Oks was an officer and director of multiple corporate defendants and was the general manager of corporate defendant 1585392 Ontario. (*Id.* ¶ 12.) Oleg Oks hired employees, instructed telemarketers to say that consumers were approved for the credit card or computer offers, held staff meetings for each new sales campaign, signed paychecks, handed out scripts, obtained the contact information for the consumers that were contacted, and overheard what telemarketers were saying to consumers. (*Id.* ¶¶ 46, 48.) Telemarketers working for the corporate defendants informed Oleg Oks about receiving telephone calls from consumers who complained that they had not received promised credit cards and computers. (*Id.* ¶ 47.) Oleg Oks set up the corporate defendants' P.O. boxes and instructed the operators of the P.O. boxes to forward the mail to him in Canada. (*Id.* ¶¶ 49-50.) The corporate defendants via their telemarketers told consumers that the P.O. box numbers were the addresses of the corporate defendants. (*Id.* ¶ 52.) Oleg Oks arranged for debt processing services to debit consumers' bank

accounts, and the debit processing firms recognized Oleg Oks as a principal of the corporate defendants. (*Id.* ¶ 53.)

Defendant Aleksandr Oks was an officer and director of multiple corporate defendants. (*Id.* ¶ 13.) He was in the office[2] every day, made sure that telemarketers placed sales calls, and entered into contracts for telephone service on behalf of the corporate defendants. (*Id.* ¶¶ 54, 55.) Aleksandr Oks arranged for bank account debiting services for the corporate defendants, which involved providing his personal financial information, such as a letter from his bank, a driver's license, balance sheet, and Canadian tax return. (*Id.* ¶ 56.) He also used his credit card to open mailboxes for the corporate defendants. (*Id.* ¶ 57.)

Defendants Oleg Oks and Aleksandr Oks pleaded guilty to criminal charges in the Ontario Court of Justice. (*Id.* ¶ 64.) They have admitted to their involvement in the above described advance credit card and computer schemes. (*Id.*)

## DISCUSSION

Summary judgment should be granted where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To defeat a motion for summary judgment, the non-movant "must set forth specific facts that demonstrate a genuine issue of triable fact and must produce more than a scintilla of evidence to support [its] position." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001). Because defendants did not respond to the FTC's Statement of Material Facts, and thus did not controvert the facts stated therein, all properly supported material facts set forth in the statement are deemed admitted. LR 56.1(b)(3)(C). "Essentially,

---

[2] "Office" refers to the principal places of business of the corporate defendants.

the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant . . . because the movant's factual allegations are deemed admitted." *FTC v. Pac. First Benefit*, 472 F. Supp. 2d 974, 979 (N.D. Ill. 2007) (quotation omitted).

Additionally, a court may make adverse inferences when a party invokes the Fifth Amendment in a civil case. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Local Rules, such as Local Rule 56.1, that deem admitted uncontroverted facts are consistent with the allowance of adverse inferences. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995). Although unsupported allegations may not be deemed admitted, allegations supported by other proof may be deemed admitted because then the Fifth Amendment inference is, as it should be, only one factor in determining guilt or liability. *Id.*

In the instant case, the pertinent facts relied upon by the FTC in its statement of material facts are independently supported by the other evidence in the record and not merely presumed true because the defendants have invoked their Fifth Amendment right against self incrimination. Thus, in light of all of the evidence in the record, the Court finds summary judgment as to Oleg and Aleksandr Oks' liability is appropriate in this case.

The FTC alleged violations of section 5 of the FTC Act, 15 U.S.C. § 45(a), as well as violations of the Telemarketing Sales Rule, 16 C.F.R. § 310.3. Because a violation of the Telemarketing Sales Rule constitutes a violation of the FTC Act, the two will be discussed in tandem. *See Pac. First Benefit*, 472 F. Supp. 2d at 980 (stating that violations of the Telemarketing Sales Rule "constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).").

To find Oleg and Aleksandr Oks liable in their individual capacity, the liability of the defendant corporations must first be established. *See FTC v. Amy Travel Serv., Inc.*, 875 F.2d

564, 573 (7th Cir. 1989). The FTC Act makes it unlawful for businesses to engage in unfair or deceptive commercial practices, which include inducing consumers to purchase certain products through advertising that is misleading in a material respect. *Kraft, Inc. v. FTC*, 970 F.2d 311, 314 (7th Cir. 1992); *see* 15 U.S.C. § 45(a). A misrepresentation is material if it contains information that is important to consumers and is likely to affect their decision about whether to purchase a product. *FTC v. Sabal*, 32 F. Supp. 2d 1004, 1007 (N.D. Ill. 1998). "In order to establish that an act or practice is deceptive, the FTC must establish that the representations, omissions, or practices likely would mislead consumers, acting reasonably, to their detriment." *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988). The misrepresentations or omissions do not need to have been made with the intent to deceive. *Id.*

The Telemarketing Sales Rule prohibits telemarketers from failing to disclose, in a clear and conspicuous manner, the total cost of, and the quantity of, any goods or services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(1)(i). It also prohibits telemarketers from misrepresenting the total cost and quantity of such goods or services, *id.* § 310.3(a)(2)(i), as well as misrepresenting any material aspect of the performance, efficacy, nature, or central characteristics of such goods or services, *id.* § 310.3(a)(2)(iii). Further, it prohibits telemarketers from requesting or receiving payment of any fee or consideration in advance of obtaining any extension of credit when the telemarketer has guaranteed or represented a high likelihood of success in arranging the extension of credit. *Id.* § 310.4(a)(4).

The corporate defendants' advance fee credit card and computer selling schemes clearly constitute unfair or deceptive commercial practices under the FTC Act. In the advance fee credit card scheme, defendants falsely represented that they could and would obtain major credit cards with no annual fees and low interest rates for consumers if the consumers allowed them to debit

7

their bank accounts in advance of receiving the credit cards. (Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 16, 18, 19, 20, 22.) No credit cards were ever obtained for those consumers whose accounts were debited, and defendants were not authorized by Visa or MasterCard to distribute those cards. (*Id.* ¶ 22.) Further, the corporate defendants induced consumers to purchase the credit cards by falsely promising added benefits, such as a cellular telephone, satellite dish system, vacation package, or home security system, none of which were ever received by consumers. (*Id.* ¶ 24.) Reasonable consumers would have been misled by such misrepresentations to their detriment as many customers did, in fact, have their accounts debited electronically and received nothing in return. (*Id.* ¶ 19). Thus, there is no fact in dispute that leaves any doubt that the corporate defendants' actions concerning their advance fee credit card scheme violated Section 5(a) of the FTC Act.

The corporate defendants' computer selling scheme likewise constituted an unfair or deceptive business practice under Section 5(a) of the FTC Act. Consumers were offered brand-name computers for a specified price and inducements, such as a seventeen-inch flat screen monitor and television satellite system, to purchase the computers. (*Id.* ¶ 25.) After debiting consumers' bank accounts, instead of providing consumers with the promised computers or other merchandise and benefits, the corporate defendants provided consumers with certificates that purportedly could be used to obtain computers from other companies. (*Id.* ¶ 27.) To redeem the certificates, however, consumers were required to pay fees not disclosed prior to the corporate defendants' debiting the consumers' bank accounts. (*Id.* ¶¶ 27, 28.) Additionally, the computers offered in the certificates were not the specified brand-name computers promised by the corporate defendants and did not include the components promised by defendants, such as a seventeen-inch flat screen monitor, unless consumers paid additional fees. (*Id.* ¶ 27.) The

8

corporate defendants never sent consumers computers, other merchandise and benefits, or the promised flat screen monitors. (*Id.* ¶¶ 29, 30.) Clearly, these practices constitute false representations relied on by consumers, who were acting reasonably, to their detriment. The corporate defendants made many promises and kept none. Thus, the undisputed facts leave no doubt that these actions of the corporate defendants, including falsely promising computers that they could not deliver, violated Section 5(a) of the FTC Act.

In addition, the corporate defendants violated Section 5(a) of the FTC Act by violating four sections of the Telemarketing Sales Rule. First, by failing to disclose the total cost of computers for sale in a clear and conspicuous manner before debiting the consumers' accounts, the corporate defendants violated Section 310.3(a)(1)(i). (Pl.'s LR56.1(a)(3) Stmt. ¶¶ 27-28.) Second, by (a) misrepresenting that consumers would receive a major credit card by paying an advance fee, when none was issued and (b) failing to specify that additional fees would be required to obtain the computers promised, the corporate defendants violated Section 310.3(a)(2)(i) because they misrepresented the total cost and quantity of the goods and services. (*Id.* ¶¶ 27-30.) Third, by misrepresenting to consumers that, after paying a fee, they would receive specific name-brand computers, which the corporate defendants never delivered, defendants violated Section 310.3(a)(2)(iii). (*Id.* ¶ 39.) Fourth, the corporate defendants violated Section 310.4(a)(4) by requiring consumers to pay an advance fee and by telling them that defendants would obtain a major credit card on their behalf. (*Id.* ¶ 16.) Thus, it is undisputed from the facts deemed admitted that the corporate defendants have further violated Section 5(a) of the FTC Act by violating the Telemarketing Sales Rule.

"Once corporate liability is established, the FTC must show that the individual defendants participated directly in the practices or acts or had the authority to control them."

*FTC v. Amy Travel Serv.*, 875 F.2d at 573. "Control can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *Id.* The FTC must demonstrate that the individual had knowledge of deceptive acts or practices, which requires establishing that "defendants had or should have had knowledge or awareness of the misrepresentations." *Id.* at 574. However, the "knowledge requirement may be fulfilled by showing that the individual had actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth." *Id.* (quotation omitted). Further, the degree to which defendants participated in the affairs of the business is probative of knowledge. *Id.*

The undisputed facts show that Oleg and Aleksandr Oks had the requisite knowledge and control to be held liable for the actions of the corporate defendants. Both served on the board of directors of several of the corporate defendants and were intricately involved in the schemes. (Pl.'s LR56.1(a)(3) Stmt. ¶¶ 12, 13.)

In particular, Oleg instructed the telemarketers to tell consumers that they were approved for the credit card and computer offers, obtained the contact information of the targeted consumers, signed paychecks, handed out scripts for the telemarketers to read, heard telemarketers carrying on the deceptive acts and practices while in the office, and was informed by telemarketers that consumers complained about not receiving credit cards or merchandise. (*Id.* ¶¶ 46-48.) Further, Oleg arranged for debit processing services to electronically debit consumers' bank accounts, and the firms that provided the debit processing services recognized him as a principal of the corporate defendants. (*Id.* ¶ 53.)

Aleksandr was in the office every day, made sure that telemarketers placed sales calls,

and overheard the contents of those telephone calls. (*Id.* ¶ 54.) He also entered into contracts for telephone service on behalf of the corporate defendants that made the deceptive telephone solicitation possible. (*Id.* ¶ 55.) Aleksandr arranged for bank account debiting services for the corporate defendants, providing his personal financial information, such as a letter from his bank, a driver's license, balance sheet, and Canadian tax return. (*Id.* ¶ 56.) He also used his credit card to open P.O. boxes for the corporate defendants. (*Id.* ¶ 57.)

In sum, the undisputed facts in the record clearly demonstrate that Aleksandr and Oleg Oks had knowledge of the corporations' deceptive acts or practices and had direct control over corporate policy. Accordingly, they are personally liable for the acts of the corporate defendants. The Court therefore grants the FTC's motion for summary judgment with regard to Oleg and Aleksandr Oks' liability.

However, the Court denies the motion for summary judgment without prejudice with regard to the relief sought. First, the FTC has failed to provide sufficient information with regard to the calculation of the monetary relief sought. For example, in its memorandum in support of summary judgment, the FTC states that the Court should order monetary relief in the amount of $4,997,695.60, a figure that represents defendants' net sales for an unspecified time period. (Pl.'s Mem. Supp. Summ. J. 16.) However, in its statement of facts, the FTC states that the amount of monetary relief should be $3,107,107.00, or the net sales during the period of April 2003 to September 2005. (Pl.'s LR 56.1(a)(3) ¶ 64q.) The FTC must clarify which amount it seeks (for what time period) and specify precisely how that amount is calculated with proper evidentiary support for that specific time period. Second, the FTC has not sufficiently addressed the requirements of a permanent injunction – irreparable injury, inadequacy of remedies at law, a balance of the hardships weighing in plaintiff's favor and the granting of an

injunction will not harm the public interest. *See eBay, Inc. v. MercExchange, LLC*, 126 S. Ct. 1837, 1838 (2006). Unfortunately, further briefing as to the relief sought against all defendants is necessary.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part plaintiff's motion for summary judgment. The Court grants the motion with respect to the issue of Oleg and Aleksandr Oks' liability. The Court denies the motion without prejudice with regard to the monetary and permanent injunctive relief requested as to the Oks, as well as the other defendants as to whom default judgment has been entered. The FTC shall file a summary judgment motion addressing its request for monetary relief and a permanent injunction within eleven days of the date of this Memorandum Opinion and Order, defendants' response is due eleven days thereafter and the FTC's reply is due five days thereafter.

**SO ORDERED.**         **ENTERED:** 11/2/07

*[signature]*

**HON. RONALD A. GUZMAN**
**United States District Judge**